## THE GAMMA.

(District Court, E. D. New York. July 31, 1900.)

COLLISION—STEAM NAVIGATION ON CANAL—CARE REQUIRED.

A steam canal boat, with three other steel boats heavily laden in tow, was passing eastward through the Erie Canal, and on rounding a bend, which obscured the view ahead, came in collision with a horse boat, which was proceeding westward, and which had passed over towards the berme bank, and stopped about 350 feet from the bend, to allow overtaking boats to pass her. *Held*, that the steam vessel was in fault for the collision in moving around the bend at such speed that she could not be stopped in such distance, and especially for failing to give any signal of her approach before entering the curve, which, though not required by any conventional rule, was required by custom, which should be held obligatory.

In Admiralty. Libel for collision.

Wilcox, Adams & Green, for libelant.

Bassett & Williams, for claimant.

THOMAS, District Judge. At about 8:45 p. m., September 4th, the canal boat Morse, closely attached to and preceding a consort, was going westward on the Erie Canal. At a point where a turn intercepted the forward view beyond 350 feet, the Morse dropped over towards the berme bank to allow two overtaking boats to pass. During this undertaking the Gamma, a steel steamer drawing two steel boats and pushing one, all loaded with grain, came around the curve, and a collision occurred between the Morse and the head boat. The libelant claims that the head boat was run into the Morse, while the Gamma contends that her captain saw the Morse some 350 feet away, and immediately reversed, and ran the head boat into the bank, and that her tow was at once run ashore; but that the horses of the Morse were whipped up, and thereby the Morse was brought in collision with the stranded head boat. The preponderance of evidence leads to the conclusion that the accident was caused by the forward motion of the Gamma, rather than that of the Morse, although the horses of the Morse may have been started up in apprehension of a collision, to aid the starboard direction which was attempted to be

given to the Morse. It is considered that the Morse did not unduly occupy the water way, and that no rule of practice or prudence condemns her for stopping when she did to allow the overtaking boats to pass. The more serious question relates to the manning of the Morse and her consort, and the alertness of those in charge. There were two persons aboard, and but one seems to have been on immediate duty when the Gamma came in view. But the Morse was practically at rest, and the failure of the second man to be in full readiness to act does not condemn the Morse, inasmuch as it does not appear that such unreadiness contributed to the accident. The passage of the overtaking boats was proceeding successfully until the Gamma disturbed the undertaking. The accident is attributable solely to the Gamma. There was no conventional rule requiring her to sound a whistle when approaching a curve. But such is the practice, and the practice should be obligatory. In the present case four great steel vessels, heavily laden with grain, impelled by steam power located in the second boat, were occupying a water way not primarily intended for such navigation. The momentum of the mass was highly dangerous to any craft with which it should come in collision. The danger arising from this new means of propulsion on the canals may be met and avoided by the use of care. Ordinary prudence would require that in approaching a bend in a canal, of an available width for passing of about 60 feet, notice of their oncoming should be given by steam-propelled boats, inasmuch as the conditions found in the present case, or others equally embarrassing, might be expected. The evidence enforces the conclusion that no such warning was given, and the Gamma and her accompanying boats found herself confronted by the four canal boats, and that she considered that there was not sufficient opportunity for passing. The jeopardy or apprehension was so great that, according to the claimant's evidence, the whole fleet was run onto the bank. When a navigator, meeting with usual and normal conditions of navigation, is obliged with precipitation to strand his vessel to prevent a collision, the act itself, in a degree, points to the absence of due care on his part. The conviction is that the Gamma did not approach the curve with sufficient caution. She was not under control as regards speed; the vigilance of her lookout is not shown; and in any case she did not give proper signals. The truth concerning the collision cannot be known with certainty, but the probabilities turn the decision against the Gamma. There should be a decree accordingly, with costs.